UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:26-CR-22 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| ANDREW MULKERIN, | : | |
| Defendant. | : | |

**GOVERNMENT'S *MOTION IN LIMINE* AND NOTICE OF INTENT TO INTRODUCE RELEVANT EVIDENCE OR, ALTERNATIVELY TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)**

AND NOW, comes the United States of America, by the United States Attorney for the Middle District of Pennsylvania, Brian D. Miller, and Assistant U.S. Attorney James M. Buchanan, and hereby moves this Court for an Order allowing for the use of intrinsic relevant evidence, or alternatively to introduce the evidence pursuant to Federal Rule of Evidence 404(b), during the Government's case in the above-captioned trial.  This motion in limine is also intended to give the defendant "notice" of the Government's intent to introduce such evidence of the defendant's "other crimes, wrongs, or acts," pursuant to Federal Rule of Criminal Procedure 404(b), at trial.

The government believes that the evidence referenced herein is not subject to Rule 404(b) because it is intrinsic to the matter at bar and is inextricably intertwined with the offense charged.  However, out of an abundance of caution, the government provides notice of its intent to introduce evidence of the following "other crimes, wrongs or acts" of the defendant at time of trial, as set forth in the indictment.  In support thereof, the following is submitted.

1.     On February 18, 2026, a federal grand jury in Harrisburg, Pennsylvania, returned an Indictment charging the defendant, Andrew Mulkerin, with one count of Threatening to Assault United States Judges and Federal Officers, in violation of Title 18, United States Code, Section 155(a)(1)(B) (Doc. 1).

2.     On February 20, 2026, the defendant appeared before the Honorable Daryl F. Bloom, Chief United States Magistrate Judge for his initial appearance and pled not guilty to the Indictment. (Doc. 12). A full detention hearing was held before the Honorable Phillip J. Caraballo, United States Magistrate Judge on February 20, 2026, and

February 23, 2026, after which Judge Caraballo ordered the defendant detained pending trial. (Doc. 19).[1]

3.     Trial in this matter is presently scheduled for April 13, 2026. (Doc. 28).

4.     Motion in Limine:

At trial, the Government intends to introduce the following evidence as intrinsic evidence to the charged crime, or alternatively as "other crimes, wrongs, or acts," pursuant to Federal Rule of Criminal Procedure 404(b):

a. **Evidence of the Prior Investigations of the Defendant by the USMS**

As alleged in Count 1 of the Indictment, on January 7, 2026, while inside an elevator at the Sylvia H. Rambo United States Courthouse ("Rambo Courthouse") in Harrisburg, Pennsylvania, the defendant, Andrew Mulkerin, told Supervisory Deputy United States Marshal Matthew Hartman ("DUSM Hartman") that he planned to "shoot the place up," meaning the federal courthouse. This threat was made

---

[1] Chief Magistrate Judge Bloom recused himself from this matter as he sits in the Sylvia H. Rambo United States Courthouse and was one of the unnamed United States Judges who were the targets of the defendant's threats as charged in the Indictment.

directly after the Honorable Henry W. Van Eck, Chief Bankruptcy Judge for the Middle District of Pennsylvania, dismissed a bankruptcy case involving the defendant.  (1:25-BK-1575).

This threat was not a solitary occurrence and the defendant's concerning behavior made during the pendency of the defendant's and his wife's bankruptcy cases was well known to DUSM Hartman.  At the time the defendant made the threat, DUSM Hartman had been investigating Mulkerin for nearly two years regarding his concerning behavior and troubling statements which Mulkerin had made to opposing counsel, court security officers, court staff, and others involved with the bankruptcy matter or who worked at the Rambo Courthouse.

The context of the January 7, 2026, threat, DUSM Hartman's understanding of that threat, and the defendant's intent to both threaten and interfere with United States judges and law enforcement officials, can only be fully understood by the jury if the full background of DUSM Hartman's investigations are presented as intrinsic evidence in this case.  Such evidence includes but is not limited to:

- A May 13, 2024, court filing in one of the defendant's bankruptcy cases in which Mulkerin writes at length about

his decision to bring firearms to a December 2023 eviction from his business premises.  In such filing, Mulkerin repeatedly references his Second Amendment rights and that he was wanted to "*make it known that the situation [the eviction] was under vehement dispute…*" (Doc. 1:24-BK-270, Doc. 120).  This filing was flagged by court staff to DUSM Hartman as concerning.

- A September 17, 2024, email the defendant sent to an attorney representing opposing parties in his bankruptcy case which concludes, in part; "*You guys definitely should have left it alone, everyone keeps making the same mistake haha…Enjoy the day fuckfaces. – andy.*" The above-described filing coupled with this email, led to the opening of a threat assessment of the defendant by DUSM Hartman on September 23, 2024.

- A December 3, 2024, physical confrontation between the defendant and Panel 7 trustee Steven M. Carr during a bankruptcy proceeding involving the defendant's wife, Irene Mulkerin.  Court Security Officer ("CSO") Kevin Shanahan

observed the defendant approached Trustee Carr, place his chest, stomach, and torso area against Trustee Carr and began to push forward with his face while inches away from Trustee Carr's face.  CSO Shanahan ordered the defendant to back away and that informed the defendant that could be arrested for "putting his hands" on anyone.  DUSM Hartman conducted an interview with the defendant concerning his behavior in court.  This physical altercation led DUSM Hartman to upgrade his threat assessment of the defendant to a full protective investigation.  As discussed below, this initial investigation was closed by DUSM Hartman on July 28, 2025, after a period of more professional and appropriate behavior by the defendant.

- Approximately a week after the physical confrontation with trustee Steven Carr, the defendant sent an email to Attorney Daniel Atlas in which the defendant states, in part: "*the guy says 'there are no more chess moves…' that was a good one. Obviously, You don't play chess Dan…How's your Buddy Steven Carr? I can't wait to finally meet you…soon I hope.*"

- On December 12, 2024, the defendant sent a letter to the USMS discussing the above-described interactions with Attorney Atlas. In that letter, the defendant, provided a copy of the above-described email and also expressed his reason for sending the letter, namely to prove the USMS with "context related to ongoing legal matters involving my wife, Irene Mulkerin, myself, and several attorneys, including Mr. Daniel Atlas, Mr. Jeffrey Dailey (Dailey LLP, and U.S. Trustee Steven Carr. I fear these individuals are attempting to misrepresent my words and actions, potentially portraying me as a threat to gain leverage in related bankruptcy and trust litigation proceedings."

- On January 8, 2025, the defendant provided additional letters to the USMS detailing his account of an interactions with Attorney Kara Gendron and Assistant U.S. Trustee Troy Sellers which took place at the Rambo Courthouse on January 7, 2025. In the letter, the defendant explains that he is "writing to document a brief interaction" between he and Attorney Gendron. Both interactions appeared to be

7

innocuous, however the defendant claimed that he was "sending this letter to your office to create an official record of the encounter." These letters indicated that the defendant knew his interactions with court staff were being monitored and were raising safety concerns with the USMS.

- The defendant's behavior during a March 26, 2025, bankruptcy proceeding (1:24-BK-2752). During the proceedings DUSM Hartman observed the defendant make several facial expressions from the gallery toward the parties and was disrespectful to the court. At one point, Chief Bankruptcy Judge Van Eck had to inquire of the defendant if he had any medical conditions that hindered his ability to control his emotions or make spontaneous verbal/nonverbal communications. The defendant denied having any such conditions.

- Conversations and written communications between bankruptcy court staff and DUSM Hartman requesting that court security staff should be present any time that the defendant was also in court.

- A June 18, 2025, email between the defendant and attorney Brent C. Diefenderfer which the defendant concludes, in part: "*Rest assured, the adversary proceeding is coming, and with it, a clear illumination of everything your clients hope remain hidden.  Govern yourself accordingly, [names of opposing parties in bankruptcy case] – darkness approaches, and it will spare no secrets.*"

- The defendant's presence at bankruptcy court proceedings on September 15, 2025, in which he was not a party.  While the defendant did not misbehave in any way, his presence was noted by Court Staff and Court Security Officers ("CSOs") who monitored the defendant while in court.

- A September 25, 2025, email the defendant sent to the United States Trustee program general email address, with acting United States Trustee copied on the email, which concludes, in part: "*Avoiding conflict by avoiding the facts is not a sustainable posture here. The record is developing. The patterns are repeating. And the timeline for reckoning is no longer indefinite.*"

- A September 26, 2025, bankruptcy court proceeding in which the defendant continuously interrupted other parties and spoke condescendingly toward the other parties.  These actions were witnessed by CSO Paul Halko and Keith Lightner who later reported the actions to DUSM Hartman and advised that the defendant's concerning behavior appeared to be escalating.

- A September 30, 2025, incident in the bankruptcy courtroom at the Rambo Courthouse in which the defendant was loud and disruptive in court and asked to leave the courtroom by CSO Zachary Smith.

- A September 30, 2025, interview between DUSM Hartman and the defendant in which DUSM notified the defendant of the ongoing USMS investigation into the defendant's actions.  In the interview DUSM further informed the defendant that his actions and communications were being perceived as threats, and that there was a potential for criminal prosecution if the defendant continued in this concerning behavior. The defendant denied ever threatening

anyone.  When DUSM asked the defendant if the USMS should be concerned with the defendant committing a violent act, the defendant denied any violent intent and indicated he would only address his grievances through legal avenues. The defendant was cooperative and forthcoming during the interview.  The new concerning behavior in the fall of 2025, led DUSM to officially re-open the protective threat investigation into the defendant on October 1, 2025.  This investigation is ongoing.

- A December 3, 2025, encounter between the defendant and CSO Brad Reiff, at the Sylvia H. Rambo United States Courthouse, in which the defendant asked CSO Reiff and an additional CSO if they were there to escort him.  When CSO Reiff responded that they were not, the defendant stated, in sum and substance, that since the CSOs were not there to escort him, they must not be worried about the defendant going on a rampage with *his* ghost gun. The defendant then tried to explain to CSO Reiff that the statement had been a joke.  The defendant further stated that he had recently

purchased a 3D printer for his children and that the printer can print gears and hinged objects.

- The details of DUSM Hartman's interviews with the defendant in an attempt to mitigate any potential threats posed by the defendant on December 3, 2024, January 8, 2025, and September 30, 2025.  In all such interviews, DUSM Hartman explained to the defendant that his actions were being perceived as threats, that the USMS was investigating the defendant for potential criminal prosecution based upon those threats, and any future threatening behavior would not be tolerated. During all the interviews, DUSM Hartman further explained to the defendant the seriousness of which the USMS takes any such threats, especially considering the recent rise in threats against federal judges, and other mass shooting or assassination attempts.

- The overall timeline and resolution of the defendant's bankruptcy case, Docket No. 1:24-BK-270, a bankruptcy case involving his wife, 1:25-BK-1575, and other bankruptcy

cases involving the defendant, to explain the defendant's nearly constant presence in the Rambo Courthouse in 2024-206, and the triggering effect that the dismissal of case 1:25-BK-1575 had on the defendant immediately prior to the January 7, 2026, threat.

### b. DUSM Hartman's knowledge on January 7, 2026, that the Defendant had access to Firearms

The Government also seeks to introduce evidence of DUSM's Hartman's knowledge and awareness that the defendant had access to firearms at the time the defendant threatened to "shoot up" the Rambo Courthouse. This evidence includes:

- The defendant's actions on December 15, 2023, at his eviction from a business premises in York, Pennsylvania, in which York County Regional Police Department officers were called to the scene by the defendant for what he claimed was a wrongful eviction. The defendant informed YCRPD and York County Sheriff Deputies that he had a concealed carry permit and intimated that he was armed. Once at the business, YCRPD officers observed the defendant go into his office and heard what appeared to the

13

closing action or "rack" of a handgun from the defendant's office. The defendant was removed from the building and had to be physically restrained and detained when he attempted to go back into the building. In the defendant's office, YCRPD officers observed and confiscated a loaded handgun, multiple magazines, and an AR-15. The information regarding this incident was relayed to DUSM Hartman via police reports and a November 4, 2024, phone interview with a York County Sheriff Deputy, Sgt. Corey Strine, who was present at the eviction.

- The defendant's bankruptcy court filings, described above, in which he repeatedly references his Second Amendment rights and his reasoning for bringing firearms to the above-described December 2023 eviction;

- The defendant's December 3, 2025, comments to CSO Reiff about the CSO's being afraid that the defendant would go on a rampage with *his* ghost gun. The defendant further commented on his access to a 3D printer and how it was capable of printing gears and hinged objects, indicating to

the CSO that the defendant had the capability of creating a operable ghost gun.

- The results of DUSM Hartman's investigation into the defendant's firearm purchases, ownership, registration, and other access to firearms prior to January 7, 2026, including a October 3, 2025, database search conducted by DUSM Hartmann which shows that the defendant purchased and had a permit to carry a .45 Caliber Smith & Wesson pistol (purchased in March of 2022) and a 9mm Glock pistol (purchased in August of 2023).

The government submits that the above-referenced evidence is intrinsic to the instant case at bar and therefore admissible in the present matter. Alternatively, the Government argues that the evidence is relevant evidence being offered for proper, non-propensity reasons, and would be admissible pursuant to Federal Rule of Evidence 404(b) even if the Court considered the evidence extrinsic to the instant charged offense.

WHEREFORE, the Government submits this Motion in Limine and will submit an accompanying brief.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney
Middle District of Pennsylvania

/s/ James M. Buchanan

Dated:  March 19, 2026

James M. Buchanan
Assistant U.S. Attorney
PA ID # 330012
james.buchanan@usdoj.gov
235 N. Washington Ave, Suite 311
Scranton, PA 18503
(570) 348-2812 (office)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :          NO. 1:26-CR-22
                            :
        v.                  :          (Judge Munley)
                            :
ANDREW MULKERIN,            :
        Defendant.          :

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the instant brief is in compliance with Local Rule 7.8(b)(2), in that the Brief in Opposition to the Defendant's Motion to Suppress contains 2,712 words.

/s/ James M. Buchanan
JAMES M. BUCHANAN
Assistant U.S. Attorney

17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :         NO. 1:26-CR-22
                            :
        v.                  :         (Judge Munley)
                            :
ANDREW MULKERIN,            :
        Defendant.          :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on March 19, 2026, she served a copy of the attached

**GOVERNMENT'S *MOTION IN LIMINE* AND NOTICE OF INTENT TO INTRODUCE RELEVANT EVIDENC OR, ALTERNATIVELY TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)**

by ECF notice upon:

Heidi R. Freese, Esq.
Counsel for the defendant

/s/ Stephanie Kakareka
STEPHANIE KAKAREKA
Legal Administrative Specialist