UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -vs- | : | No. 1:26-CR-22 |
| | : | |
| ANDREW MULKERIN, | : | (Judge Munley) |
| | : | |
| Defendant | : | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY**

## I.    Introduction and Procedural History

On February 18, 2026, a federal grand jury in Harrisburg, Pennsylvania, returned an Indictment charging the defendant, Andrew Mulkerin, with one count of Threatening to Murder and Assault United States Judges and Federal Officers, in violation of Title 18, United States Code, Section 155(a)(1)(B) (Doc. 1).[1]

On February 20, 2026, the defendant appeared before the Honorable Daryl F. Bloom, Chief United States Magistrate Judge for his initial appearance and pled not guilty to the Indictment. (Doc. 12). A full detention hearing was held before the Honorable Phillip J.

---

[1] Count 1 of the Indictment alleges, in relevant part, that the defendant committed this above-referenced crime by, "telling a Deputy United States Marshal that he would "shoot up" the Sylvia H. Rambo United States Courthouse."

Caraballo, United States Magistrate Judge on February 20, 2026, and February 23, 2026.[2] United States Magistrate Judge Caraballo sits in the William J. Nealon Federal Building and United States Courthouse in Scranton, Pennsylvania.

At the end of the hearing Judge Caraballo ruled that that the Defendant was a danger to the community and that he should be detained pending further proceedings. Judge Caraballo followed his oral order with a written order describing his findings. (Doc. 19).

After various other filings, on March 12, 2026, the Defendant filed a Motion to Reconsider the Magistrate's Detention Order, along with an accompanying Brief in Support. (Docs. 26 & 27).

On March 16, 2026, this Court issued a Scheduling Order, setting the date for the defendant's jury selection and trial for April 13, 2026, and the date for the pre-trial conference on April 2, 2026. (Doc. 28).   In that Order, the Court also notified that the Court would consider the defendant's motion for reconsideration of detention at the conference on April 2, 2026. (Doc. 28).

---

2  Chief Magistrate Judge Bloom recused himself from this matter as he sits in the Sylvia H. Rambo United States Courthouse and could be one of the unnamed United States Judges who were the targets of the defendant's threats as charged in the Indictment.

On March 19, 2026, the parties filed a Joint Statement of the Case. (Doc. 32).   On the same day, the Government filed a Motion in Limine and Notice of Intent to Introduce Relevant Evidence, or Alternatively to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), along with an accompanying Brief in Support. (Docs. 33 & 36).

On March 26, 2026, the Government filed a Brief in Opposition to the Defendant's Motion to Reconsider his pre-trial detention. (Doc. 36).

On March 27, 2026, the parties filed additional trial documents pursuant to this Court's order and the Defendant filed a Brief in Opposition to the Government's Motion in Limine. (Docs. 38-43, 44).

On March 30, 2026, after the filing deadline for pretrial motions had passed in this matter, the Defendant filed an untimely Motion to Disqualify United States District Court Judges for the Middle District of Pennsylvania, with an accompanying Brief in Support. (Docs. 46 & 47).

On March 31, 2026, the Court ordered the Government to respond to the defendant's motion at the end of the next day, April 1, 2026, by 5:00pm.   The Court also provided Notice of Oral Arguments on the instant motion would take place on April 2, 2026, at 10:00a.m. in the

William J. Nealon Federal Building and United States Courthouse in Scranton, Pennsylvania. (Doc. 48).

On April 1, 2026, the Government filed an opposed request for an extension to reply to the Defendant's motion no later than April 13, 2026. (Doc. 49).

On the same day, this Court issued an Order granting the Government's motion, in part, and directed the Government to file its response no later than April 7, 2026, and the Defendant to file their reply by April 14, 2026. The Court further re-scheduled the oral arguments on the instant motion to April 15, 2026, and jury selection/trial was continued pending the Court's decision on the disqualification motion. (Doc. 50).

For the reasons described in more detail below, the defendant's motion for disqualification should be denied.

## II.    Argument

Under Title 28, United States Code, Section 455(a), a judge "shall disqualify herself in any proceeding in which her impartiality might *reasonably* be questioned." Specific instances where recusal is required include situations in which the judge has "a personal bias or prejudice

concerning a party, or **personal** knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §455(b)(1)(emphasis added).

The Supreme Court has found that opinions formed by judges based on facts introduced during the course of proceedings, "almost never constitute a valid basis for a bias or partiality motion…unless [judges] display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Here, the defendant has moved this Court for extraordinary relief, to not only disqualify itself specifically, but to disqualify the entire judicial bench from the Middle District of Pennsylvania. The defendant argues for disqualification on two grounds, neither of which has any merit.

First, he argues that the "appearance of impartiality" warrants the entire Middle District of Pennsylvania bench to recuse itself. Second, he wrongly argues that information provided to this Court and to other judges in the Middle District of Pennsylvania indicates the judges have "personal knowledge of disputed facts." (Doc. 46, ¶11). As discussed in more detail below, the *reasonable* appearance of impartiality does not warrant the disqualification of the entire District bench, only removal of

5

the case away from the Sylvia H. Rambo United States Courthouse in Harrisburg, Pennsylvania, as has already been done.

Additionally, this Court has no *personal* knowledge about the disputed facts of this case.[3] In December of 2025, the Court was provided a brief overview of the United States Marshals Service's ("USMS") investigation into the defendant's concerning conduct, as this Court was presiding over a civil case involving the defendant. That information is not "personal" as it only became known to the Court through its role as a presiding judicial officer. That information is also the same information already provided to this Court through the instant proceedings, particularly from the Indictment, the transcripts of earlier proceedings, and the parties' filings in this case.

Such information was also never provided to the entire District Court bench of the Middle District of Pennsylvania, as argued in the defendant's motion. Attachments 1 and 3 to the defendant's motion depict an internal security alert and a USMS memorandum which were not made public nor disseminated to the judges in the district.

---

3 As is known to the Government at the time of this filing. However, if the Court was an eyewitness to the defendant's behavior at the Sylvia H. Rambo United States Courthouse and therefore had "personal" knowledge of the underlying facts in this case, then recusal may be appropriate.

As this Court has only come to know the Defendant through its role as the judicial officer in this and other federal proceedings, disqualification would only be appropriate if the Defendant has demonstrated that this Court has a "deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky,* 510 U.S. at 55. The Defendant has failed to meet this burden, and disqualification is inappropriate.

    1) <u>No Reasonable Person Could Question this Court's Impartiality</u>

The Defendant first argues that a reasonable person could believe that this Court would appear biased because the Defendant made a threat against other judges in a different courthouse in which this Court does not sit.

In support of his argument that this Court should be disqualified based upon the appearance of impartiality the Defendant relies upon the easily distinguishable decision by the Seventh Circuit in *United States v. Nettles*. In *Nettles*, the defendant threatened to detonate a truck bomb and destroy the federal courthouse in Chicago, Illinois, which housed the chambers of *all* the judges in the district. 394 F.3d 1001, 1002-03 (7th Cir. 2005)(emphasis added). The defendant in

*Nettles*, beyond just making threats, also took steps to purchase ammonium nitrate from an undercover FBI agent. *Id.* The district court judge denied the defendant's motion for recusal.

However, on mandamus, the Seventh Circuit overturned the district court's decision and also recused the Circuit, as its judges had chambers in the same federal building, and therefore could reasonably be viewed as potential victims in the threatened attack. *Id.* at 1003. ("Although we feel ourselves to be no more prejudiced against Nettles than [District Court Judge] does, a reasonable observer might conclude that, should he be convicted and sentenced, and appeal, he would no more get a fair shake in our court that he would in the district court, since the appellate judges in this courthouse are as menaced by an Oklahoma City style attack as the district judges.") *Compare, e.g., United States v. Yousef,* 327 F.3d 56 (2d Cir. 2003)(appellate court upheld District Court judge's decision not to recuse herself based upon the defendant's threat to kidnap an unnamed federal judge); *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995)(recusal warranted due to "extraordinary" circumstances involving the Oklahoma City federal

8

building bombing, but the Circuit did *not* hold that the entire bench of the District of Oklahoma was subject to mandatory disqualification).

The facts in *Nettles* are easily distinguishable from the facts in this case. Here, the defendant threatened to "shoot up" the Sylvia H. Rambo United States Courthouse, a separate courthouse located over 120 miles from the federal courthouse where this Court sits. As discussed below, it is *unreasonable* to believe that in making that threat, the defendant meant to include the entire Middle District of Pennsylvania bench, including this Court who sits in a different courthouse.

The facts of this case directly mirror the facts addressed in the Ninth Circuit's decision in *United States v. Clemens*. 428 F.3d 1175 (9th Cir. 2005). In *Clemens*, the defendant was charged with threatening to assault three federal district court judges in the Central District of California. *Id.* at 1177. The case was assigned to another judge in the same district. *Id.* at 1179. Prior to trial, Clemens petitioned to disqualify every judge in the district. *Id.* at 1177. The Chief Judge of the Ninth Circuit ordered the case be temporarily transferred to a judge from the District of Nevada for the limited

9

purpose of deciding the disqualification motion.   That judge denied the defendant's petition.   *Id. at 1177.*   Clemens then sought a writ of mandamus to the Ninth Circuit.   *Id. at 1177.*

In their decision, the Ninth Circuit found that the district judge's decision denying disqualification was "entirely correct." *Id.*   The Ninth Circuit found that the defendant's threats against the three judges could ***not be reasonably*** construed to be a threat against the entire bench, as the Central District of California had 34 current judges sitting in four separate courthouses.[4]   *Id.* at 1179-89. (Emphasis added).

Here, the facts of the instant case are more like the facts found in *Clemens*, than those found in *Nettles*.   As alleged in the Indictment, the defendant threatened to "shoot up" a specific courthouse, the courthouse he was inside when he made the statement immediately after a bankruptcy case was dismissed. That courthouse is only home to a portion of the judges of the Middle District of Pennsylvania, a minority portion, at that.

---

4 Including bankruptcy, magistrate, and recalled magistrate judges, the Middle District of Pennsylvania currently has 17 sitting judges in four courthouses spread across the width of the district.

10

The district bench in the Middle District of Pennsylvania, like the bench in *Clemens*, but unlike the bench in *Nettles*, is spread out over several courthouses, hundreds of miles away from each other.    It is simply not reasonable that a threat to "shoot up" one of the four courthouses in this District could be construed as a threat against the entire judicial bench.    *See also United States v. Barajas-Bandt*, No. 10-CR-82, 2011 WL 742713 at *2 (S.D. Cal, February 24, 2011)(district-wide recusal denied by judge sitting in the *same* courthouse as the judge who was the target of the defendant's threats: "Recusal is not mandatory under §455(a) in these circumstances, if district-wide recusal is not warranted based on professional relationships that exist by virtue of serving in the same district then, *a fortiori*, it would be error for an individual judge to recuse solely because threats were made against a colleague.")(internal citations omitted); *United States v. Marseet*, No. 6:24-CR-6032, 2025 WL 3481813 at *5, W.D. New York, December 4, 2025)(recusal of the presiding Chief Judge not warranted in case involving threats against two district judges from the same district).

11

The same considerations can also be applied to the threats against the Federal law enforcement officers who were threatened by the defendant. In *United States v. Jacobs*, the Third Circuit took up this issue in denying a motion to recuse all the judges in a particular courthouse in the Western District of Pennsylvania.   311 Fed. Appx. 535 (3d Cir. 2008)(non-precedential).   In *Jacobs*, the defendant was alleged to have assaulted a United States Marshal.   Prior to trial, he moved to recuse all the judges sitting in the same courthouse where his crime took place, or in the alternative, change venue to a different Western District of Pennsylvania courthouse.

The Third Circuit found that a recusal motion must be based on "objective facts," not mere "possibilities" and unsubstantiated allegations." *Jacobs*, 311 Fed. Appx. at 537 (*quoting United States v. Martorano*, 866 F.2d 62, 68 (3d Cir. 1989).   The Third Circuit denied recusal, finding that the relationship between a judge and the Marshals in the same courthouse were simply "not close enough to cause a reasonable person to question the impartiality of all the judges in any case involving a Marshal." *Jacobs*, 311 Fed. Appx. at 537.

12

The same rationale can be found here.   The Defendant's threat to "shoot up" the Sylvia H. Rambo United States Courthouse does not warrant recusal of the entire district bench, including this Court.   Like the decision in *Clemens*, the facts of this case do not give rise that "any reasonable observer [could] draw the inference that a threat was intended against the entire bench." *Clemens*, 428 F.3d at 1179.

Finally, the Defendant compares this matter with the circumstances from another pending case from the Middle District of Pennsylvania, *United States v. Camino*, in which the defendant is charged with Assaulting a Federal Officer , in violation of 18 U.S.C. §111(a), Possession of a Dangerous Weapon in a Federal Facility, in violation of 18 U.S.C. §930(b), and Possession of a Dangerous Weapon in a Federal Court Facility, in violation of 18 U.S.C. 930(e)(1). Case No. 1:24-CR-345.

In *Camino*, a well-publicized case where an armed intruder to the Sylvia H. Rambo United States Courthouse was shot by Courthouse Security Officers, the case was re-assigned by Order of Chief Judge Michael A. Chagares to a district judge from another district within the Circuit.   (Case No. 1:24-CR-345, Doc. 9).

13

However, Chief Judge Chagares' Order did not provide a rationale for the designation to another district, nor would it be fair to assume it was based upon the considerations presented in the instant motion. The docket does not show that either party moved for transfer or recusal in that case, nor did the district court judge assigned the matter in the Middle District of Pennsylvania. There are numerous differences in the *Camino* case where change of venue or disqualification could be appropriate that are not present here. For instance, *Camino* not only involves different criminal charges but also the actual use of violence at a Courthouse.

The *Camino* case was also highly publicized given that the defendant was shot by court security officers. A prejudiced jury pool is an issue that could have been the basis for the decision to move the *Camino* case to the District of New Jersey. *See Skilling v. United States*, 561 U.S. 358, 377-99 (2010). That concern is not present here.

The *Camino* case is too dissimilar and the rationale for its designation to the District of New Jersey is too unclear for any conclusions to be drawn regarding the instant matter. And Chief Judge Chagares's reassignment of the Camino case does not compel this

14

Court to recuse itself, much less to commend recusal of the entire bench.

### This Court has No Personal Knowledge of a Disputed Fact

The Defendant also seeks to disqualify this Court based upon this Court's "personal knowledge of disputed evidentiary facts." (Doc. ¶36, 12).   The basis for this "personal knowledge" is his incorrect belief that information allegedly provided to this Court, or other judges, by the USMS constitutes "personal knowledge."   It does not.

The information the United States Marshal provided this Court regarding a security update that involved, among other things, a prior assessment of the Defendant, was also made known to this Court through the indictment, court filings, and other information available to the Court through its judicial oversight of court proceedings.[5]   This Court is not an eyewitness to the Defendant's conduct that gave rise to the United States Marshal's prior security assessment, of the

---

[5] The defendant also seeks to disqualify the entire MDPA bench due to wrongly interpreting USMS internal documents provided during discovery, believing that such internal documents were shared with the MDPA judges.    The defendant is incorrect.    The "Security Alert" and "Confidential Statement" attached to the defendant's motion were internal USMS documents which were NOT shared with the judges. As the Court will note, the last sentence of the "Security Alert" states, "This Security Alert shall not be posted in public view and is not to be shared with outside agencies without prior permission from United States Marshals Service Leadership."

Defendant's alleged threat made in January of 2026, nor does this Court have personal, i.e. firsthand, knowledge of the facts of this case.

Disqualification under 28 U.S.C §455(b)(1) is only mandated when courts have "*personal* knowledge of disputed evidentiary facts concerning the proceedings." 28 U.S.C. §455(b)(1); *United States v. Coven*, 662 F.2d 162, 168 (2d Cir. 1981)("personal" means "extrajudicial"); *United States v. Widgery*, 778 F.2d 325, 328 (7th Cir. 1985)("Knowledge of disputed facts requires disqualification only if the knowledge has an extrajudicial source.")

For information provided to the Court in their role as judicial officers overseeing a case, disqualification is only warranted where the movant demonstrates a "deep-seated favoritism or antagonism," by the court. *United States v. Ciavarella*, 716 F.3d 705, 719 (3d Cir. 2013)(*quoting Liteky*, 510 U.S. at 555).   Those criteria are not satisfied here.

Neither this Court, nor the remainder of the district bench has any *personal* knowledge of the facts of this case.   This Court may have been provided second-hand information the United States Marshal communicated concerning the Defendant and his concerning behavior

16

surrounding his prior bankruptcy cases, but that was only provided in the Court's role as the judicial officer overseeing this and other matters involving the Defendant.

"Opinions formed by the judge on the basis of facts introduced or events occurring in" the proceeding "do not constitute a basis for a bias or partiality motion" until the movant demonstrates a "deep-seated favoritism or antagonism. *United States v. Blair*, No. 23-3590, 2026 WL 604731 at * 6 (3d Cir. March 4, 2026)(non-precedential)(*citing Liteky v. United States*, 510 U.S. at 55).

Put simply, information provided to judges during the course of a current or prior proceeding will not give rise to disqualification unless and until the movant meets the high burden of demonstrating actual prejudice.   The defendant has failed to do that here.

Any information the United States Marsha provided this Court was conveyed to the Court solely in the Court's role of judicial officer, and that information is within the Court's purview based upon the parties filings.   A judge's opinion formed upon their proceedings before her – as the Defendant presumes in the case here - rarely meets the

17

high bar described in *Likety*, and the instant matter is no exception to that rule.

<u>District Court's Authority to Disqualify the Entire Middle District of Pennsylvania Judicial Bench</u>

Alternatively, if the Court finds that recusal is appropriate for herself, it's not clear that this Court has the authority to recuse the entire judicial bench of the district. Instead, the procedure outlined in *United States v. Clemens* is appropriate to rule if the entire judicial bench should also be recused/disqualified.[6]

Recusal of the entire judicial bench is an "extraordinary" measure of relief. *Nichols*, 71 F.3d at 350; see also *United States v. Bergrin*, 682 F.3d 261, 282 (3d Cir. 2012)(Reassignment to a different district court judge is "an extraordinary remedy that should seldom be employed.") Other instances where such relief was found to be appropriate include the Oklahoma City bombing and a plot to detonate the entire federal courthouse in Chicago with a truck bomb.   *Nichols*, 71 F.3d, 347; *Nettles,* 394 F.3d 1001.   A threatening comment made in an elevator in

---

6 Namely, the Chief Judge of the Third Circuit can appoint a judge from another district to determine if such recusal is appropriate.   *Clemens*, 428 F.3d at 1177. Or, alternatively, the matter can be referred to Chief Judge Chagares to designation to another district pursuant to 28 U.S.C. §292(b). As noted, this is the procedure that led to the *Camino* case being transferred to the District of New Jersey.

18

a single courthouse, as is the case here, does not give rise to such an extraordinary measure.

As the Ninth Circuit noted at the end of their decision in *Clemen*s:

> "In closing, we regretfully must also observe that we live in a time when threats against federal judges are not uncommon.   Many of these actions are made with the intent of altering the outcome of judicial proceedings. Despite these threats to themselves and their colleagues, judges throughout the country continue to administer the law fairly and professionally.     We cannot, and will not, presume otherwise."
> 428 F.3d at 1180.

At bottom, the Defendant is inviting this Court to conclude—on an expedited timeline—that his utterance of a verbal threat within the Harrisburg courthouse *automatically* compels the recusal of *every* judicial officer of this Court, regardless of where they sit. As argued above, the Defendant's argument lacks legal support.   But what is every bit as concerning is that to embrace the Defendant's argument would mean that in *any* criminal case in which a defendant is accused of making a threat in one of the district's four courthouses, the entire bench would be powerless to preside.   That extreme position finds no support in the law and would have potentially far-reaching consequences beyond this single criminal case.

19

## III.   <u>Conclusion</u>

For the reasons stated above, the Defendant's motion should be denied.

Respectfully submitted,

Date: April 7, 2026

<u>/s/ James M. Buchanan</u>
JAMES M. BUCHANAN
Assistant United States Attorney
PA 330012
James.Buchanan@usdoj.gov

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

                              :

        -vs-             :        No. 1:26-CR-22

                              :

ANDREW MULKERIN,         :        (Judge Munley)

                              :

       Defendant      :

                              :

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the instant brief is in compliance with Local Rule 7.8(b)(2), in that the Brief in Opposition to the Defendant's Motion to Suppress contains 3,680 words.

                          /s/ James M. Buchanan
                          JAMES M. BUCHANAN
                          Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :
  :
  -vs-   :   No. 1:26-CR-22
  :
ANDREW MULKERIN,   :   (Judge Munley)
  :
  Defendant   :
  :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on April 7, 2026, she served a copy of the attached:

## GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY

by e-mail to the following:

Heidi R. Freese, Esq.,
Michael P. Leahey, Esq.
Attorneys for the Defendant


      Stephanie Kakareka
      Stephanie Kakareka
      Legal Administrative Specialist