IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:26-cr-00022 |
| | : | |
| v. | : | (Munley, J.) |
| | : | |
| | : | |
| ANDREW MULKERIN | : | (Electronically Filed) |

## REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO ANDREW MULKERIN'S MOTION TO DISQUALIFY UNITED STATES DISTRICT COURT JUDGES FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

## INTRODUCTION

Through its Opposition, the Government argues that Andrew Mulkerin seeks "extraordinary relief" by moving for the disqualification of the Judges of the Middle District of Pennsylvania. Not so. All Mr. Mulkerin asks is that he be treated the *same* as similarly situated individuals who have been charged with threatening one or more Judges of the Middle District Court family. It is the Government that asks this Court to treat Mr. Mulkerin differently.[1]

The Government has proffered three arguments in opposition to Mr. Mulkerin's Motion: 1) No reasonable person could question the Court's impartiality,

---

[1] It is telling that the Government's opposition to Mr. Mulkerin's Motion is so strong. Mr. Mulkerin has not asked to have the United States Attorney's Office for the Middle District disqualified, nor has he sought to have the trial setting moved to another district or even another courthouse within the district, so it is curious why the Government opposes our request only to have the Middle District of Pennsylvania Judges disqualified.

2) The Court has no personal knowledge of any disputed fact, and 3) The District Court does not have the authority to disqualify the entire Middle District Bench.  For the reasons set forth below, the Government's Opposition is factually and legally incorrect.

## ARGUMENT

A.    **Reasonable people knowing all the circumstances would harbor doubts regarding the Court's impartiality.**

Like the Government, undersigned counsel has no doubt about the impartiality of this Court. Impartiality is not the question upon which this issue turns. The issue of disqualification turns on the question of whether the judge's "impartiality might reasonably be questioned" by an outside observer. 28 U.S.C. 455(a).  The objective standard requires disqualification when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir. 1987) (additional citations omitted).  To this end, courts have cautioned that, "[I]t is essential to hold in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be."  *In re: Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

The facts of this case to an outside observer clearly call into question the *appearance* of impartiality of the Court[2].  Specifically:

---

[2]The *Mason* court specifically distinguished between members of the public and those involved with the judiciary.

1. On or about February 2, 2026, the USMS prepared a Threat Analysis/Assessment, which appears to have been disseminated at the Board of Judges Meeting wherein Andrew Mulkerin was discussed.  The assessment stated that Mr. Mulkerin "has demonstrated activity of concern and threatening behavior towards USMS protective interests", and that he stated that he "would shoot up the place."[3]  (Doc. 46, Exh. "C," p. 10).

2. Attached to the February 2, 2026 Operational Plan was a Security Alert which identified Mr. Mulkerin as a threat and specifically referenced Judges Van Eck, Wilson, Neary, Munley, and Mehalchick as judges with whom he has active cases.  (Doc. 46, Exh. "A").

3. In what appears to be a USMS report provided in discovery, the USMS describe its protected interests as the "court family," showing a close relationship between and among members of the Court.  (Exh. 13, p. 1).

4. On or about December 11, 2025, Marshal Hartman emailed Judge Munley concerning the protective investigation regarding Mr. Mulkerin and identified Judge Munley as a judge presiding over one of Mr. Mulkerin's civil matters.  It is believed that a telephone call between Judge Munley

---

[3] In its Brief, the Government states the USMS memorandum was not disseminated to the judges in the district. (Doc. 51, p. 6). Mr. Mulkerin requests the government produce witness testimony relative to the USMS memorandum, including whether the contents of the memorandum or Andrew Mulkerin were discussed formally or informally at the February 6, 2026 Board of Judges Meeting.

and Marshal Hartman regarding this subject may have also taken place. (Doc. 46, Exh. "B").

5. Through its Motion in Limine (Doc. 33) the Government asked this Court to allow it to present evidence which predated the alleged statement on January 7, 2026, some of which would have been the same information Marshal Hartman discussed with Judge Munley in December 2025.

These circumstances do not present a close call. An outside observer, unfamiliar with the judicial system or the procedures of the security details of the Middle District, would reasonably believe that this Court's impartiality may be in question.

**B.   This record establishes that the Middle District Court had personal knowledge of the facts of this case outside of the Indictment, court filings, and information the Court received through its judicial oversight of court proceedings.**

The Government's Opposition ignores the evidence it produced to Mr. Mulkerin in this case. The Judges of the Middle District (and specifically this Honorable Court) had information about Mr. Mulkerin *regarding the facts underlying his federal criminal investigation*. The December 11, 2025 email from Marshal Hartman to this Honorable Court was for the purpose of discussing Mr. Mulkerin and the fact that he was a "subject" of a "USMS protective investigation." (Doc. 47, Exh. "B"). The Government deemed this communication relevant to its

investigation and prosecution, which is *why* it was disclosed to Mr. Mulkerin in discovery.

Moreover, in its Motion in Limine, the Government asks the Court to admit evidence regarding the "nearly two years" of events leading up to January 7, 2026 regarding "concerning behavior and troubling statements" made by Mulkerin. (Doc. 33, p. 4). It appears that this is the very conduct Marshal Hartman discussed with Your Honor and other Judges in emails and phone calls before Mr. Mulkerin was charged. While Mr. Mulkerin does not have a recording or a report of the telephone call that took place between Marshal Hartman and this Honorable Court (or other Judges), it appears from the Government's own Motion in Limine that many of the underlying facts were discussed with this Court *before* Mr. Mulkerin was indicted. *Id.* That the Government now asks this Court to rule on the admissibility of evidence it had personal knowledge of is both puzzling and troubling.

Contrary to Footnote 5 of the Government's Opposition, and without testimony of record establishing otherwise, it appears that the Security Alert was presented (or discussed) with the Judges of the Middle District during the Middle District of Pennsylvania, Board of Judges Meeting and Luncheon on February 6, 2026.  The Security Alert is page 10 of the Operational Plan. (Doc. 47, Exh. "A"). This "Law Enforcement Sensitive" document and the email and follow up telephone

call to this Honorable Court provided information to the Court that was outside of routine court filings.

Additionally, Marshal Hartman had direct email, and possibly telephone communications, with Judge Munley and other Judges in the Middle District regarding Mr. Mulkerin, based on her judicial role in presiding over one of his cases. Clearly, Marshal Hartman believed Judge Munley may be a target of Mr. Mulkerin's "threats." This is the type of information that Judge Munley would not otherwise have personal knowledge of, had she not been part of the Middle District Court "family." (Exh. 13, p. 1). Depending upon rulings related to the Motion in Limine, this Honorable Court becomes a potential witness, as the question of whether Mr. Mulkerin's January 7, 2026 statement constituted a "real threat" could be relevant to his alleged pre-indictment acts.

**C.    Historically, in judicial threat cases in the Middle District of Pennsylvania, designation of an out of district Judge pursuant to 28 U.S.C. § 292(b) is routine.**

The Middle District Court has routinely, and as a matter of course, sought intracircuit judicial assignment in judicial threats against members of the Middle District Court "family." *See* Exh. 1-3, *United States v. Robert Vargo,* 3:22-cr-00366, (wherein *Vargo* was charged with mailing a threatening communication to kill the Honorable Robert D. Mariani), Exh. 4-6, *United States v. Keith Dougherty*, 1:19-CR-140 (wherein *Dougherty* was charged with mailing threatening communication

6

to the Honorable Christopher C. Conner), Exh. 7-9, *United States v. Camino*, 1:24-CR-345, (wherein *Camino* was charged with forcibly assaulting a Harrisburg Court Security Officer in the Sylvia H. Rambo United Sates Courthouse). Not only were these cases assigned to out of district judges, that assignment was made *without* motion from the defendants and within days of the indictment: *Camino* five days after the indictment, *Vargo* six days after the indictment and *Dougherty* two days after the indictment.  Likewise, in the Western District of Pennsylvania, in *United States v. Henry Holmes*, 2:23-CR-80, (Exh. 9-12) (wherein *Holmes* was charged with threatening Western District of Pennsylvania Chief Judge Mark R. Hornak, United States Magistrate Judge Maureen P. Kelly, and United States Magistrate Judge Cynthia Reed Eddy) Middle District Chief Judge Matthew W. Brann was designated and assigned to preside over those matters in the Western District of Pennsylvania.

In each of these cases, the Third Circuit designated an out of district judge pursuant to 28 U.S.C. § 292(b).  This makes sense because Marshal Hartman and the United States Marshals Service are tasked to protect the Judges in the Middle District Court "family." (*See* Exh. 13, p. 1). As such, when a member of that court "family" is alleged to be threatened, it logically follows that a non-court family member should preside over the trial of the defendant charged with committing those crimes.

## CONCLUSION

For all of the foregoing reasons, Mr. Mulkerin respectfully requests that this Honorable Court grant his Motion to Disqualify and that the Judges of the Middle District of Pennsylvania disqualify themselves pursuant to 28 U.S.C. § 455 and Canon 2.11 of the Model Code of Judicial Conduct.

**TUCKER ARENSBERG, P.C.**

Dated: April 14, 2026      /s/ *Heidi R. Freese*

Heidi R. Freese, PA I.D. #87668
hfreese@tuckerlaw.com
Michael P. Leahey, PA I.D. #92933
mleahey@tuckerlaw.com
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
(717) 234-4121
*Attorneys for Andrew Mulkerin*

## **CERTIFICATE OF SERVICE**

I, Heidi R. Freese, Esquire, do hereby certify that I have served the Reply to the Government's Opposition to the Motion to Disqualify United States District Court Judges for the Middle District of Pennsylvania as follows:

James M. Buchanan, Esquire
Sarah R. Lloyd, Esquire
Assistant United States Attorney

and sent to the defendant by placing the same in the United States mail, first class, postage prepaid, addressed as follows:

Andrew Mulkerin

TUCKER ARENSBERG, P.C.

Date:  April 14, 2026

*Heidi R. Freese*
Heidi R. Freese, Esquire
PA I.D. #87668
300 Corporate Center Drive, Ste. 200
Camp Hill, PA 17011
(717) 234-4121
HFreese@tuckerlaw.com